People of Porto Rico, Plaintiff and Appellant, *v.* Heirs of J. Serrallés, Defendants and Appellees.

No. 4587.   Argued May 23, 1929.—Decided December 3, 1929.

*James R. Beverly, Attorney General; J. A. López Acosta, Acting Attorney General; Arturo Ortiz Toro, Assistant Attorney General,* and *R. A. Gómez, Deputy Attorney General,* for appellant. *Francisco Parra Capó, Jaime Sifre Jr.* and *F. Ochoteco,* for appellees.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

The People of Porto Rico filed in the District Court of Ponce a complaint dated June 17, 1926, wherein it alleged that the defendants, the Heirs of J. Serrallés, owe to the plaintiff as income tax the sum of $82,346.34 as specified in an exhibit attached to the complaint and forming part thereof, out of which sum $412.38 corresponds to the income tax for 1918, $11,643.58 corresponds to the income tax for 1919, and $70,290.38 to the income tax for 1920; that notwithstanding the fact that such taxes are due, the Heirs of Serrallés have failed to pay them, after being requested to do so. A certificate from the Auditor of Porto Rico is attached to the complaint, "containing a detailed statement showing that the Heirs of J. Serrallés owe to The People of Porto Rico the sum of $82,346.34 as income tax corresponding to the fiscal years 1918, 1919 and 1920, as it appears from an official report submitted to the Auditor of Porto Rico on May 19, 1925, and indorsed by him to the Hon. Governor of Porto Rico on May 20, 1925." The aforesaid amounts are set down in the report under the heading "Balance due," in each year, and after deducting therefrom the taxes in accordance with the liquidation of the Treasury Department.

The defendant heirs demurred to the complaint on the grounds of lack of facts sufficient to constitute a cause of action, lack of capacity to sue, and prescription of the action.

After a hearing on the demurrer the court gave judgment on the grounds of lack of facts sufficient to constitute a cause of action and of prescription, dismissing the complaint and entering judgment to that effect. An appeal therefrom has been taken to this Supreme Court.

In its decision on the demurrer the court copies part of the report from the Auditor of Porto Rico, an interesting paragraph of which reads as follows:

"In compliance with the provisions of section 126 of the Political Code, I, Frederick G. Holcomb, do hereby CERTIFY:"

Section 126 of the Political Code is as follows:

"Section 126. In all cases where the payment of any final balance certified to be due to The People of Porto Rico is not made within a reasonable time, the Auditor shall make written request to the Attorney General of Porto Rico to cause suit to be instituted for the recovery of the same, and shall transmit with such request a copy of the Auditor's statement and certificate showing such balance to be due, duly certified over his official signature and the seal of his office, together with a copy of the official bond on which suit is to be instituted, certified in like manner by the Treasurer of Porto Rico."

It appears from the complaint and the document attached thereto that the income tax of the Heirs of Serrallés corresponding to the years 1918, 1919 and 1920, had been liquidated by the Treasury Department and paid by them. Otherwise no meaning could be given to the words "balance due" designating the differences between the liquidation made by the Treasury Department and that made by the entity (not mentioned) which submitted to the Auditor the report which the Auditor uses for the purpose of this suit. Legally, the liquidation should have been made in the year in which the tax had to be paid, that is, in 1919 for the tax of 1918, and so forth. No other presumption is possible than that the law had been complied with by the Treasury Department, and that the returns had been filed within their legal term, that is, 1919, 1920 and 1921.

Act No. 80 of 1919 (June 26, 1919) contains a section which reads as follows:

"Section 56.—That any tax assessable, pursuant to the provisions of this Act, may be computed and levied by the Treasurer within five years from and after the date on which the return was rendered or should have been rendered; and no proceedings shall be brought for the collection of said tax after the expiration of five years.

"In case that, for the purpose of evading payment of the tax, no proper returns are made, and in case of false returns, the amount of the tax assessable may be determined and the tax collected at any time without limitation."

It does not appear that the above section 56 has been amended in an express manner or repealed by conflict with any subsequent provision.

Act No. 74 of August 6, 1925, includes a section to the same effect, to wit:

"Section 63.—If after the enactment of this Act the Treasurer determines that any assessment should be made in respect of any income or excess-profits tax imposed by the Income Tax Law No. 59 of 1917, the Income Tax Law No. 80 of 1919 and the Income Tax Law No. 43 of 1921, or by any such Act as amended, the amount which should be assessed (whether as deficiency or as interest, penalty or other addition to the tax) shall be computed as if this Act had not been enacted, but the amount so computed shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including the provisions in case of delinquency in payment after notice and demand) as in the case of the taxes imposed by this title, except as otherwise provided in section 60."

And section 60 of said Act No. 74 is as follows:

"Section 60.—(a) Except as provided in section 61 and in subdivision (b) of section 57 and in subdivision (b) of section 62:

"(1) The amount of income and excess-profits and the amount of income taxes imposed by this Act or by Income Tax Act No. 59, of 1917, Income Tax Act No. 80 of 1919, Income Tax Act No. 43 of 1921, or by any of said Acts, as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

"(2) In the case of income received during the lifetime of a decedent, the tax shall be assessed, and any proceedings in court for the collection of such tax shall be begun, within one year after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate of such decedent, but not after the expiration of the period prescribed

for the assessment of the tax in paragraph (1) or (2) of this subdivision.

"(b) The period within which an assessment is required to be made by subdivision (a) of this section in respect of any deficiency shall be extended (1) by 30 days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of section 57 and no appeal has been filed with the board of Review and Equalization, or (2) if an appeal has been filed, then by the number of days between the date of the mailing of such notice and the date of the final decision by the Board.'

We quote from these legal texts because the trial judge has made a careful examination of them. We cannot fail to bring into this opinion something which is really interesting. If the right to collect the taxes of the years 1918, 1919 and 1920 had expired in 1925 by the express provision of the law, it is not a sound doctrine to maintain that a subsequent act (that of August, 1925) revived that right.

We construe this legal precept literally. Acts No. 59 of 1917, No. 80 of 1919 and No. 43 of 1921 have not been repealed thereby; and the prescription already effected has created a firm and final legal status. The contrary would be an absurdity, and, as stated by the jurisprudence, any construction leading to an absurdity should be rejected.

But, furthermore, section 60 of the law under review is clear and confirms the theory of prescription to which we refer. The appellant invokes section 61 of the same law which says:

"Section 61.—(a) In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

"(b) Where both the Treasurer and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 60 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

"(c) Where the assessment of the tax is made within the period prescribed in section 60 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after

the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

"(d) This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act such assessment, distraint or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this Act."

But it should be noticed that the circumstances justifying an exception to the general principle are clear and express: "In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return . . ." And in a complaint indisputably implying that the return was made and the tax paid in accordance with the liquidation of the Treasury Department it would be indispensable to allege falsity or fraud in such return to justify the proceeding, and this has not been done in the case at bar.

The appellant cites the decision of the Supreme Court of the United States in *New York & Albany Lighterage Company* v. *Bowers,* 273 U. S. 346, and the confirmatory decision in *Benjamin Russell* v. *United States,* 278 U. S. 181. In the latter case citation is made of section 250 of Revenue Act, 1918, which is very similar to the laws invoked in the present case, it being noted that in the one under comment it is said:

"Except in the case of false or fraudulent returns . . . ."

We think we should copy here a paragraph from the decision mentioned by us (*Russell* v. *United States*) which contains a sound doctrine. It is as follows:

"If an assessment made before that date came within the ambit of paragraph 278, its effect would be retroactive; and certainly it would produce radical change in the existing status of the claim against the petitioners—would extend for some five years a liability which had almost expired. *United States* v. *Magnolia Petroleum Co.,*

276 U. S. 160, 162 declares: 'Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears.' No plain purpose to change the status of the claim against petitioners as it existed just before June 2, 1924, can be spelled out of the words in paragraph 278 or otherwhere.''

The demurrer of prescription was decided rightly by the district court. It was properly brought up on demurrer by the party, since the elements required by the demurrer appear with inevitable logic from the complaint itself.

It is unnecessary to consider the other assignments of error, since the decision of the above assignment is sufficient for an affirmance of the judgment.

The judgment appealed from must be affirmed.

### ON REHEARING

#### March 21, 1930.

We are requested to reconsider our judgment of December 3, 1929, so as to modify that rendered by the trial court in order to allow the plaintiff to amend the complaint.

This court has constantly been inclined to use its discretion so as to allow reasonable or justifiable amendments, not arbitrarily. The limit to that discretion is to be found in the reasonableness of the amendment, and in that the circumstances must be such as to further the ends of justice by granting leave. This is not to mean that judicial discretion should be used to permit a defendant to be harassed indefinitely, or the latter to prolong a case unnecessarily.

The main grounds alleged in the motion to reconsider are that the plaintiff, should it be allowed to amend, would plead in its amended complaint that the returns filed by the defendants do not show the real capital invested, nor do such returns contain the necessary data for the distribution of the deductions made or faithfully determine such deductions, that the particulars therein are uncertain, inexact and false; and

that the defendants prevented, through appeals, the prosecution of the action for the collection of the taxes until 1924; that the complaint can be amended so as to allege that there was in the case an assessment of taxes from the time of the ruling by the Board of Review and Equalization, and that the defendants have been repeatedly required to pay the sum which it is now sought to be collected.

There is no doubt that what, it seems now, they seek to plead in the amended complaint might have been pleaded before. But this is a matter that would not prevent us from exercising our discretion.

Citation is made of the following paragraph from the decision in the case of *Vellón* v. *Central Pasto Viejo, Inc.*, 37 P.R.R. 531:

"A distinct system of procedure has been established and one of its modalities is that of allowing amendments to the pleadings inspired by a desire that actions be prosecuted with all correctness and at the same time to secure to the parties the right decision as required by justice. For the purpose of prescription jurisprudence has laid down the rule that an amended complaint substitutes the original complaint, except as to the filing or commencement of the action for which purpose one must be guided by the original complaint. Estate of Chavier v. Estate of Giráldez, 15 P.R.R. 145, and cases cited in the opinion. Exception is also made of the case in which the amendment introduces a new or different cause of action. (37 Corpus Juris, 1074.) Here it is true that the amendment involved something substantial, but did not introduce a new or different cause of action. It completed the same action that had been prosecuted from the outset."

The doctrine laid down in *Fajardo Development Co.* v. *Succession of Morfi,* 17 P.R.R. 660, is invoked as to liberality in permitting amendments and as to when they should be refused.

We do not think that in granting the right to amend, this court could restrict such right.

The judgment rendered in the present case must be modified so as to permit the plaintiff to amend its complaint.